IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION, OXFORD

DONALD and JANET BETTS,
individually, as the parents of
CHRISTOPHER ADAM BETTS,
deceased, and as the parents and
natural guardian of
JONATHAN WESLEY BETTS

    Plaintiffs,                                       Case Number: 3:04cv169-M-A

vs.

GENERAL MOTORS CORPORATION,

    Defendant.

GM'S MEMORANDUM IN SUPPORT OF
*DAUBERT* MOTION TO EXCLUDE ALLAN KAM
(PLAINTIFFS' REBUTTAL WITNESS)

I
INTRODUCTION

General Motors Corporation (GM) requests that this Court exclude the opinions of Plaintiffs' rebuttal expert Allan Kam because those opinions do not meet the requirements of FRE 702.

II
PROCEDURAL BACKGROUND

After GM served its Expert Reports, the Plaintiffs filed a motion requesting permission to name rebuttal experts.[1] The Court granted that motion after the discovery cutoff.[2]

---

[1] Document #36.

[2] Document #66.

The deadline to file motions was February 5, 2006.[3] Plaintiffs served a "rebuttal" Expert Report from Mr. Kam on February 10, 2006.[4]

The present motion was filed after the motion cutoff, but GM could not have filed this motion before the motion cutoff because GM did not have Mr. Kam's "rebuttal" Expert Report before that date.

Shortly after receiving Mr. Kam's report, GM promptly filed a *Motion to Strike* and *Memorandum in Support of Motion to Strike* because the issues addressed in Mr. Kam's report are not proper rebuttal.[5] That motion is pending.

### III
### ALLAN KAM

Mr. Kam is a lawyer who retired from the National Highway Traffic Safety Administration (NHTSA).[6] GM is not attacking Mr. Kam's qualifications as a lawyer.

GM is asking the Court to exclude Mr. Kam's testimony because it is not specialized knowledge that will assist the jury in this case understand the evidence or determine a fact at issue. In addition, Mr. Kam is not an automotive engineer and is not a glass expert, and he is not qualified to give expert opinions about automotive engineering design or automotive glass. Furthermore, any relevant testimony Mr. Kam might offer about Federal Motor Vehicle Safety Standard (FMVSS) 205 is not reliable. Finally, Interim NHTSA Reports, preliminary memoranda and Notice of Proposed Rulemaking that Mr. Kam proposes to discuss are inadmissible hearsay that does not satisfy the

---

[3]*Case Management Order* dated February 25, 2005 at page 3, ¶13.

[4]Document #72.

[5]Document #80 and Document No. 81.

[6]*Exhibit "A"* at page 1.

2

satisfy the requirements of FRE 803(8)(C). *See Smith v. Isuzu Motors, Ltd*, 137 F. 3rd 859, 861-63 (5th Cir. 1998).

# IV
# KAM'S REPORT

Mr. Kam's Expert Report (attached as *Exhibit "A"*) contains information about:

a. Background on NHTSA and the Safety Act (§IV at pages 3-7);

b. Federal Motor Vehicle Safety Standards (§V at pages 7-15);

c. A history of NHTSA rulemaking on FMVSS 205 (§VI at pages 16-27); and

d. Mr. Kam's summary and observations about items (a)-(c) above ( §VII at pages 29-30).

# V
# KAM'S PROPOSED TESTIMONY ABOUT
# BACKGROUND ON NHTSA AND THE SAFETY ACT

SECTION IV OF KAM'S REPORT: Section IV of Mr. Kam's report is entitled *Background on NHTSA and the Safety Act*. It is divided into two sections.

SECTION IV(A): Section IV(A) of Mr. Kam's report describes the basic structure of NHTSA. GM has no *Daubert* challenges to Section IV(A) of Mr. Kam's report.

SECTION IV(B): Section IV(B) of Mr. Kam's report contains Mr. Kam's interpretation of the NHTSA rulemaking process. This is not a proper topic of expert opinion in this case. It is not "scientific, technical or other specialized knowledge" that will assist the jury "to understand the evidence or to determine a fact in issue" in this lawsuit as required by FRE 702.

ARGUMENT: It is this Court's duty to instruct the jury on the law applicable to this case. It is not appropriate for Mr. Kam, a lawyer, to offer his own "spin" about how those laws were created and taint the jury about how those laws should be interpreted and applied.

3

This Court will instruct the jury on the applicable law, and this Court will instruct the jury to follow that law. The Plaintiffs should not be permitted to call a lawyer as an expert to explain how that law was made. This Court will likely instruct the jury using Mississippi statutes, such as the Mississippi Products Liability Act. This Court would certainly not permit a party to present expert testimony describing the details of the legislative process that led to the eventual passage of that statute. Further, this Court will likely instruct the jury using rules of law established in prior Court decisions. Clearly, this Court would not permit the jury to hear expert testimony describing the judicial process that led to the pronouncement of law in a prior Court decision. Likewise, Mr. Kam's interpretation of how NHTSA enacts laws is also impermissible.

Furthermore, pages 6-7 of Mr. Kam's report contains inflammatory statements that will confuse and mislead the jury about its duty to follow applicable law and, at the same time, will unfairly prejudice GM. For instance, Mr. Kam apparently desires to tell the jury that:

a. "The motor vehicle industry has an enormous influence on NHTSA rulemaking."[7]

b. "The motor vehicle industry is a very powerful constituency."[8]

c. "It is very difficult for NHTSA to issue a standard (or to amend an existing standard to adopt a more stringent requirement) to which the industry is adamantly opposed, particularly in a deregulatory environment."[9]

d. "Moreover, throughout its history, NHTSA has been considerably (although not exclusively) dependent upon the industry for technical information."[10]

---

[7] Kam Report, *Exhibit "A"* at page 6.

[8] *Id.*

[9] *Id.*

[10] *Id.*

4

e. "Outside the rulemaking record, the industry also can exert its influence on existing and potential agency rulemaking. One way this has been done is by lobbying Congress."[11]

f. "In addition, within the Executive Branch of the Federal Government, the industry has been known to exert influence outside of the meetings with NHTSA's officials (which are memorialized by memoranda placed in the pertinent dockets of pending rulemakings and comments to NHTSA's rulemaking notices."[12]

g. "Sometimes the agency [NHTSA] makes sharp changes in its rulemaking after administrations change. The head of the agency, the Administrator, is a political appointee."[13]

h. "So rulemaking on FMVSSs has a political component. FMVSS rulemakings sometimes have taken sharp changes after changes in national administrations, which typically result in changes in NHTSA's politically-appointed leadership. Major controversial decisions on issuing, amending, and/or rescinding FMVSSs, are generally made by political appointees, not by NHTSA's expert career technical staff."[14]

This Court would not allow expert testimony about the political process, including elections and committee proceedings, that resulted in duly enacted statutes that the jury will be instructed to follow in this case. This Court would also not allow expert testimony about the political process that led up to the election or appointment of judges whose decisions the jury will be instructed to follow in this case. Likewise, Plaintiffs should not be allowed to call Mr. Kam as an expert in this case to undermine the legitimacy of federal laws. Mr. Kam's proposed testimony is an invitation for the jury to pick and choose which duly enacted laws it will choose to follow — in direct contravention of what this Court will instruct the jury to do.

> In the orderly trial of a case, the law is given to the jury by the court and not introduced as evidence. It is the function of the jury to determine the facts from the

---

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.* at page 7.

5

evidence and apply the law as given by the court to the facts as found by them from the evidence. Obviously, it would be most confusing to a jury to have legal material introduced as evidence and then argued as to what the law is or ought to be.

*United States v. Bernhardt*, 642 F.2d 251, 253 (8th Cir. 1981), quoting *Cooley v. United States*, 501 F.2d 1249, 1253-54 (9th Cir. 1974), *cert. denied* 419 U.S. 1123, 95 S. Ct. 809, 42 L. Ed. 2d 824 (1975). *See also Bammerlin v. Navistar International Transportation Corp.*, 30 F.3d 898, 900 (7th Cir. 1994) (jury verdict reversed after experts erroneously permitted to interpret FMVSS 208; "The meaning of federal regulations is not a question of fact, to be resolved by the jury after a battle of experts. It is a question of law, to be resolved by the court."); *Contini v. Hyundai Motor Company*, 876 F.Supp. 540 (S.D.N.Y. 1995).

## VI
## KAM'S PROPOSED TESTIMONY ABOUT
## FEDERAL MOTOR VEHICLE SAFETY STANDARDS

SECTION V: Section V of Mr. Kam's report is entitled *Federal Motor Vehicle Safety Standards*. It is divided into 7 sections.

SECTION V(A): Section V(A) of Mr. Kam's report contains Mr. Kam's interpretation of what Federal Motor Vehicle Safety Standards are. This type of testimony is impermissible. *See Bammerlin v. Navistar International Transportation Corp., supra; Contini v. Hyundai Motor Company, supra.*

SECTION V(B): Section V(B) of Mr. Kam's report continues with more of Mr. Kam's personal interpretation of the law.[15] Mr. Kam gives his interpretation of the effect of compliance with Federal Motor Vehicle Safety Standards, and his legal opinion about what those standards do

---

[15] On page 2 of his report, Mr. Kam makes it clear that he does not purport to speak for NHTSA. "The opinions and conclusions in this report are mine."

6

and do not mean.[16] Mr. Kam apparently intends to quote portions of the Safety Act for the jury, and then tell them what, in his legal opinion, those laws mean.[17] He then apparently intends to give his legal interpretation on the validity of defenses that are raised by manufacturers in some products liability cases.[18] None of this proposed testimony satisfies the requirements of FRE 702.

Although Mr. Kam is not an engineer,[19] he also apparently intends to give automotive design opinions. For instance, Mr. Kam apparently intends to testify that "it is possible for a manufacturer, in designing a part or system to comply with an FMVSS, to choose a smart design resulting in a non-defective product, or a poor design resulting in a defective product."[20] This proposed testimony does not satisfy the requirements of FRE 702.

SECTION V(C): Section V(C) of Mr. Kam's report contains no "scientific, technical or other specialized knowledge" that will assist the jury in this case "to understand the evidence or to determine a fact in issue. Mr. Kam merely gives his personal interpretation of the duly enacted FMVSS. For instance, he states that several of those standards "are rather lenient, not representing the state-of-the-art or the most advanced safety features and technology that manufacturers are capable of designing into their vehicles and equipment."[21] Mr. Kam is not qualified to give design opinion. Even if he was, it would be improper for him to testify about what the law means. *See Bammerlin v. Navistar International Corp., supra*; *Contini v. Hyundai Motor Company, supra.*

---

[16] Kam Report, *Exhibit "A"* at page 8.

[17] *Id.* at pages 9-10.

[18] *Id.* at page 10.

[19] *See* Mr. Kam's CV which is attached to Kam Report, *Exhibit "A."*

[20] Kam Report, *Exhibit "A"* at page 10.

[21] *Id.* at page 11.

SECTION V(D) AND SECTION V(E): GM has no *Daubert* challenges to Section V(D) and V(E) of Mr. Kam's report.

SECTION V(F): Section V(F) of Mr. Kam's report is, once again, Mr. Kam's personal interpretation of the law, and is not permissible expert testimony under FRE 702. *See Bammerlin v. Navistar International Transportation Corp., supra; Contini v. Hyundai Motor Company, supra.*

## VII
## KAM'S PROPOSED TESTIMONY ABOUT
## THE HISTORY OF NHTSA RULEMAKING ON FMVSS 205

SECTION VI OF MR. KAM'S REPORT: Section VI of Mr. Kam's report is entitled *History of NHTSA Rulemaking on FMVSS 205*. It is divided into 2 sections.

SECTION VI(A): Section VI(A) of Mr. Kam's report contains Mr. Kam's personal interpretation and "spin" about FMVSS 205. This type of testimony is inadmissible because it does not satisfy the requirements of FRE 702. *See Bammerlin v. Navistar International Transportation Corp., supra; Contini v. Hyundai Motor Company, supra.*

SECTION VI(B): Section VI(B) of Mr. Kam's report contains Mr. Kam's discussion about NHTSA's proposed rulemaking for FMVSS 205 during 1966, 1981, 1983, 1989, 1991 and 2002.[22] It also contains Mr. Kam's discussion about how NHTSA has invited comments on an NHTSA planning document[23] and how NHTSA has announced public meetings[24] to discuss preliminary issues related to FMVSS 205. It also contains Mr. Kam's discussion about Interim NHTSA

---

[22] *Id.* at pages 17-20 and 26.

[23] *Id.* at pages 20-21.

[24] *Id.* at pages 22-23.

8

Reports.[25] NHTSA regulations and NHTSA final rules are relevant evidence. However, Interim NHTSA Reports, NHTSA preliminary memoranda and NHTSA Notices of Proposed Rulemaking are inadmissible hearsay that does not satisfy the requirements of FRE 803(8)(C). *See Smith v. Isuzu Motors, Ltd.*, 137 F.3rd 859, 861-63 (5th Cir. 1998). Such inadmissible hearsay does not become admissible merely because the Plaintiffs hired a lawyer to read the federal docket and write a report.

The hearsay testimony that Mr. Kam proposes to give concerning FMVSS 205 is not based on his personal knowledge. Mr. Kam did not participate in FMVSS 205 rulemaking activities.[26]

ARGUMENT: Earlier, in Section IV of his report, Mr. Kam makes many prejudicial statements about NHTSA and its rulemaking process. These are general statements, and Mr. Kam lacks the personal knowledge to tie those prejudicial statements to FMVSS 205, the only FMVSS that directly addresses automotive glazing.

For instance, Mr. Kam admits that his statement that the automotive industry can exert its influence on existing and potential agency rulemaking is merely "a generic discussion of the rulemaking process" and "not a specific discussion of Standard 205."[27] Mr. Kam did not personally participate in FMVSS 205 rulemaking proceedings, and did not personally witness any directives given by NHTSA political leadership concerning FMVSS 205.[28] He has never seen a deliberative process document at NHTSA concerning FMVSS 205.[29] Mr. Kam was not privy to the

---

[25] *Id.* at pages 23-25.

[26] Deposition of Allan Kam, *O'Hara v. GM, Exhibit "B"* at pages 35-38.

[27] *Id.* at pages 59-60.

[28] *Id.* at pages 60-61.

[29] *Id.* at page 62.

9

recommendations of the career staff at NHTSA concerning FMVSS 205.[30] He does not know what the technical recommendations of the NHTSA staff were concerning FMVSS 205, and is unaware of any decision by a political appointee on FMVSS 205 that was made notwithstanding contrary recommendations of the NHTSA technical staff.[31] Mr. Kam does not know what the initial NHTSA technical staff recommendations were concerning the Interim NHTSA Advance Glazing reports were, and whether those were changed in the preparation of the Final Report because of policy guidance that filtered down from the NHTSA leadership.[32]

Mr. Kam's proposed testimony about FMVSS 205 is not based on his personal knowledge. It is also not testimony based upon sufficient facts or data; it is not the product of reliable principles and methods; and it is not an opinion reached after Mr. Kam has applied principles and methods reliably to the facts of this case.

## VIII
## KAM'S PROPOSED SUMMARY AND OBSERVATIONS

SECTION VII OF MR. KAM'S REPORT: Section VII of Mr. Kam's report is entitled *Summary and Observations*. It is a summary of the opinions that he intends to offer in this case.

ARGUMENT: As demonstrated above, Mr. Kam lacks personal knowledge about the FMVSS 205 rulemaking proceedings. He proposes to offer the opinions expressed in Section VII of his report merely because he has knowledge about how rulemaking in general works, and he applies that knowledge to reach inferences about what happened concerning FMVSS 205."[33] This

---

[30] *Id.* at page 63.

[31] *Id.* at page 66.

[32] *Id.* at pages 69-71.

[33] *Id.* at pages 75-76.

type of speculative testimony, concerning issues that are not admissible evidence, is not "scientific, technical or other specialized knowledge" that will assist the jury "to understand the evidence or to determine a fact in issue" in this lawsuit as required by FRE 702.

## IX
## CONCLUSION

This Court should exclude the rebuttal opinions of Allan Kam because they do not satisfy the requirements of FRE 702.

Respectfully submitted,


BY:   /s/ *Paul V. Cassisa, Jr.*
      PAUL V. CASSISA, JR.
      MS Bar No. 5921
      Attorney for Defendant


OF COUNSEL:

Paul V. Cassisa, Jr., Esq.
BERNARD, CASSISA, ELLIOTT & DAVIS
P.O. Box 1138
Oxford, MS 38655
(662) 234-7236

Gene D. Berry, Esq.
BAKER, DONELSON, BEARMAN, CALDWELL
& BERKOWITZ
P. O. Box 14167
Jackson, MS 39236
(601) 351-2400

11

# CERTIFICATE OF SERVICE

I certify that on the 28th day of February, 2006 I electronically filed the foregoing with the Clerk of Court using the ECF system which sent notification of such filing to the following:

Michael B. McHenry, Esq.
Gleason & McHenry
P.O. Box 7316
Tupelo, MS 38802-7316
michael.mchenry@gleason-mchenry.net

Michael Chovanec, Esq.
Jill M. Madajczyk, Esq.
Patrick M. Ardis, Esq.
Wolff Ardis, P.C.
5810 Shelby Oaks Drive
Memphis, TN 38134-7341
mchovanec@wolffardis.com
jmadajczyk@wolffardis.com
pardis@wolffardis.com

/s/ Paul V. Cassisa, Jr.
PAUL V. CASSISA, JR.