IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION, OXFORD

DONALD and JANET BETTS,
individually, as the parents of
CHRISTOPHER ADAM BETTS,
deceased, and as the parents and
natural guardian of
JONATHAN WESLEY BETTS

     Plaintiffs,                                      **Case Number: 3:04cv169-M-A**

vs.

GENERAL MOTORS CORPORATION,

     Defendant.

GM'S REPLY TO
PLAINTIFFS' RESPONSE IN OPPOSITION TO
GM'S *DAUBERT* MOTION TO LIMIT THE TESTIMONY OF ALLAN KAM
(PLAINTIFFS' REBUTTAL WITNESS)

I
INTRODUCTION

*Plaintiffs' Opposition to GM's Daubert Motion to Limit the Testimony of Allan Kam (Plaintiffs' Rebuttal Witness)* (Document #198) fails to specifically respond to those portions of Mr. Kam's testimony that GM objects to.

Plaintiffs quote excerpts from the Expert Report of Kim Ewing (GM's Expert) that they claim Mr. Kam will rebut, but they fail to provide a single citation to any of the specific statements made by Mr. Kam that GM objects to in which Mr. Kam actually rebuts any of those quotes from Mrs. Ewing's Expert Report.

Plaintiffs do not address the merits of GM's position that Mr. Kam should not be allowed to undermine the integrity of NHTSA's rulemaking process through the testimony that GM objects to. Instead, plaintiffs attack GM, they attack GM's expert and they attack GM's lawyer.

Although GM does not dispute Mr. Kam's legal ability, plaintiffs glorify Mr. Kam's experience as a lawyer at NHTSA. Plaintiffs ignore GM's argument that, lacking an engineering and automotive design background, Kam is not qualified to give expert opinions about automotive design and glass issues.

When the rancor and straw men are stripped from plaintiffs' argument, it is clear that *GM's Daubert Motion to Limit the Testimony of Allan Kam (Plaintiffs' Rebuttal Witness)* (Document #190) should be granted.

## II
## A REBUTTAL EXPERT MUST STILL COMPLY WITH THE RULES OF EVIDENCE

Plaintiffs argue that Mr. Kam is merely a rebuttal witness. Like other expert witnesses, the testimony of rebuttal experts must comply with FRE 402, 403 and 702.

## III
## KAM DOES NOT "REBUT" WHAT MRS. EWING STATES
## IN HER EXPERT REPORT

On pages 5-7 of *Plaintiff's Response in Opposition to GM's Motion to Limit the Testimony of Allan Kam (Plaintiffs' Rebuttal Expert)* (Document #198), plaintiffs list the following statements from GM's expert which they claim Mr. Kam will rebut — but they fail to cite a single instance in the testimony that GM objects to in which Mr. Kam actually rebuts these statements:

1.      *The driver-side and passenger-side, front door glass ... tempered safety glass ... meet the applicable Federal Motor Vehicle Safety Standard (FMVSS) 205 ...*

2

**Those portions of Mr. Kam's testimony that GM seeks to exclude do not properly rebut this statement. Plaintiffs do not cite a single sentence that GM has objected to in Mr. Kam's report and explain why that statement by Mr. Kam is competent and properly admissible rebuttal testimony to this statement by Mrs. Ewing.**

2.      *As recognized in NHTSA's August 1999 report... more research is needed before the agency can determine conclusively the efficacy and safety of advanced glazing.*

**Those portions of Mr. Kam's testimony that GM seeks to exclude do not properly rebut this statement. Plaintiffs do not cite a single sentence that GM has objected to in Mr. Kam's report and explain why that statement by Mr. Kam is competent and properly admissible rebuttal testimony to this statement by Mrs. Ewing.**

3.      *Some of these unresolved issues are: (a) practicability of prototype systems, (b) risk of negative unintended consequences, (c) possible increased injuries to belted occupants, (d) potential conflict or interaction between ejection-mitigating glazing and other ejection countermeasures, (e) test protocol, (f) effectiveness of alternative glazing under crash deformation conditions, and (g) laceration, entrapment, field-of-view and durability issues.*

**Those portions of Mr. Kam's testimony that GM seeks to exclude do not properly rebut this statement. Plaintiffs do not cite a single sentence that GM has objected to in Mr. Kam's report and explain why that statement by Mr. Kam is competent and properly admissible rebuttal testimony to this statement by Mrs. Ewing.**

4.      *Despite repeated requests by some, NHTSA has declined to require automakers to adopt alternative side window glazing such as laminated glass, and therefore has continued to allow the current available options under FMVSS 205 ...*

**Those portions of Mr. Kam's testimony that GM seeks to exclude do not properly rebut this statement. Plaintiffs do not cite a single sentence that GM has objected to in Mr. Kam's report and explain why that statement by Mr. Kam is competent and properly admissible rebuttal testimony to this statement by Mrs. Ewing.**

5.      *In the June 18, 2002 Federal Register, NHTSA announced the termination of potential rulemaking on advanced glazing regulatory requirements to reduce the risk of ejections in crashes.*

**Those portions of Mr. Kam's testimony that GM seeks to exclude do not properly rebut this statement. Plaintiffs do not cite a single sentence that GM has objected to in Mr. Kam's report and explain why that statement by Mr. Kam is competent and properly admissible rebuttal testimony to this statement by Mrs. Ewing.**

3

6.      *In the agency's presentation on "NHTSA's Crashworthiness Rollover Research Program,"
        given at the May, 2005 ESV Conference, it was stated that "The first objective for the Phase
        2 research is to develop a test methodology, including a test device, to evaluate the retention
        performance of potential ejection mitigation systems...."*

        **Those portions of Mr. Kam's testimony that GM seeks to exclude do not properly rebut
        this statement.  Plaintiffs do not cite a single sentence that GM has objected to in Mr.
        Kam's report and explain why that statement by Mr. Kam is competent and properly
        admissible rebuttal testimony to this statement by Mrs. Ewing.**

7.      *... NHTSA's data do not indicate the enhanced containment capability of laminated glass
        compared to tempered glass in current moveable side window designs of vehicles involved
        in rollover and other types of crashes.*

        **Those portions of Mr. Kam's testimony that GM seeks to exclude do not properly rebut
        this statement.  Plaintiffs do not cite a single sentence that GM has objected to in Mr.
        Kam's report and explain why that statement by Mr. Kam is competent and properly
        admissible rebuttal testimony to this statement by Mrs. Ewing.**

8.      *I will discuss the content of Federal Motor Vehicle Safety Standard 205 as it relates to
        design options for side window glazing.*

        **Those portions of Mr. Kam's testimony that GM seeks to exclude do not properly rebut
        this statement.  Plaintiffs do not cite a single sentence that GM has objected to in Mr.
        Kam's report and explain why that statement by Mr. Kam is competent and properly
        admissible rebuttal testimony to this statement by Mrs. Ewing.**

9.      *... I will also provide factual information on the history of the regulation and industry
        standards for side window glazing.  This testimony may include a discussion of the
        information contained in the documents produced as Bates Nos. Betts 1941 - Betts 1845
        (FMVSS 205 compliance documentation.*

        **Those portions of Mr. Kam's testimony that GM seeks to exclude do not properly rebut
        this statement.  Plaintiffs do not cite a single sentence that GM has objected to in Mr.
        Kam's report and explain why that statement by Mr. Kam is competent and properly
        admissible rebuttal testimony to this statement by Mrs. Ewing.**

10.     *... I will also provide factual information on the history of the regulation and industry
        standards for side window glazing.... This testimony may include a discussion of documents
        produced as Bates Nos. Betts 17,838 - Betts 33,073.*

        **Those portions of Mr. Kam's testimony that GM seeks to exclude do not properly rebut
        this statement.  Plaintiffs do not cite a single sentence that GM has objected to in Mr.**

**Kam's report and explain why that statement by Mr. Kam is competent and properly
admissible rebuttal testimony to this statement by Mrs. Ewing.**

## IV
## LEGAL CONCLUSIONS BY KAM ARE INADMISSIBLE

Mr. Kam's opinions about the law should be excluded.  *See Restivo v. Hanger Prosthetics*

*& Orthotics, Inc.*, 2007 WL 4561578 (E.D. La.)

It would be impermissible to allow a lawyer, especially one who formerly worked for the

National Highway Traffic Safety Administration, to provide legal opinions about the law that this

Court will instruct the jury about.  That is what Mr. Kam and the plaintiffs, if allowed, intend to do

through some of the testimony that GM has asked the Court to exclude, including:

> *A manufacturer's compliance with these minimum standards does not relieve a
> manufacturer from any duties or responsibilities under common law to design safe
> vehicles.  Congress has provided that compliance with an FMVSS does not constitute
> a defense in a product liability suit.  (49 U.S.C. § 30103.)  See H.R. Rep. No. 1776,
> 89th Cong. 2nd Sess (1966) at p. 24 ("It is intended, and this subsection [§ 108(c) of
> the original Safety Act] specifically establishes, that compliance with safety
> standards is not to be a defense or otherwise to affect the rights of parties under
> common law particularly those relating to warranty, contract, and tort liability.")
> In other words, FMVSSs do not define a manufacturer's total responsibility for the
> safe design and of its motor vehicles or motor vehicle equipment; compliance with
> applicable FMVSSs does not relieve a manufacturer of its duty to safely design its
> products, and to identify and remove safety defects therein.  FMVSSs are not
> intended to define what is a safe product under all circumstances, or to relieve a
> manufacturer from its responsibility to design a safe product.[1]*

> *  *  *  *  *  *  *  *  *  *

> *Sometimes a defendant manufacturer in a products liability case tries to make or
> imply the specious argument that, since FMVSSs must "meet the need for motor
> vehicle safety," and since its vehicle met the FMVSS requirements, therefore the
> vehicle must be safe.  But, as the aforementioned interpretation letter from Chief*

---

[1]Kam Report at p. 8 attached as *Exhibit "A"* to Document #190.

*Counsel Berndt clearly indicates, FMVSSs do not solve the entire safety problem just because each FMVSS is supposed to "meet the need for motor vehicle safety."[2]*

\* \* \* \* \* \* \* \* \* \*

*If a new vehicle complies with all applicable FMVSSs, that does not mean that cannot or should not be recalled for safety problems. The Safety Act also requires that a manufacturer recall vehicles or equipment that "contain a defect that relates to motor vehicle safety," which is commonly referred to as a "safety-related defect."[3]*

\* \* \* \* \* \* \* \* \* \*

*FMVSSs are only minimum standards covering a limited number of aspects of performance. That a vehicle complied with FMVSSs when it was manufactured does not mean that it is "safe" under all circumstances, or that its design represented the state-of-the-art at the time.[4]*

## V
## AN EXPERT WITNESS CANNOT ENCOURAGE JURY NULLIFICATION

Section IV(B) of Mr. Kam's report contains his interpretation of the NHTSA rulemaking process. This is not a proper subject of expert opinion. It is not "scientific, technical or other specialized knowledge" that will assist the jury "to understand the evidence or to determine a fact in issue" in this lawsuit as required by FRE 702. His testimony in this area is also not relevant in this case.

Plaintiffs do not like what the duly enacted NHTSA regulations say, so they have hired a former NHTSA lawyer to:

1.     Criticize the process through which that law is made;

2.     Describe proposed changes in regulations that NHTSA explored and rejected; and

---

[2] *Id.* at p. 10.

[3] *Id.* at p. 15.

[4] *Id.*

3.    Impermissibly interject Interim NHTSA Research Reports, rather than Final NHTSA Conclusions.

Mr. Kam's opinions and observations that GM objects to criticize the process by which the National Highway Traffic Safety Administration issues regulations and conducts rulemaking procedures. This Court:

a.    Would not permit expert testimony describing the negotiations during the legislative process that led to the eventual passage of a statute; and

b.    Would not permit expert testimony describing deliberations between judges and their staff that led to the release of a judicial decision.

Likewise, Mr. Kam's interpretation about how NHTSA enacts laws, offered by plaintiff to undermine the importance of those laws, is also impermissible.    Such an invitation for jury nullification is exactly what the plaintiffs and Mr. Kam, if allowed, intend to do through Mr. Kam's proposed testimony that:

> *The motor vehicle industry has an enormous influence on NHTSA rulemaking. Rulemaking is a quasi-legislative process, and in exercising the authority that Congress delegated to the agency to issue FMVSSs, the agency takes into account the views of major constituencies. The motor vehicle industry is a very powerful constituency. It is very difficult for NHTSA to issue a standard (or to amend an existing standard to adopt a more stringent requirement) to which the industry is adamantly opposed, particularly in a deregulatory environment. Moreover, throughout its history, NHTSA has been considerably (although not exclusively) dependent upon the industry for technical information.[5]*
>
> \* \* \* \* \* \* \* \* \* \*
>
> *Outside the rulemaking record, the industry also can exert its influence on existing and potential agency rulemaking. One way this has been done is by lobbying Congress. In addition, within the executive branch of the federal government, the industry has been known to exert influence outside of the meetings with NHTSA's*

---

[5] *Id.* at p. 6.

7

*officials (which are memorialized by memoranda placed in the pertinent dockets or pending rulemakings) and comments to NHTSA's rulemaking notices.[6]*

\* \* \* \* \* \* \* \* \* \*

*Sometimes the agency makes sharp changes in its rulemaking after administrations change. The head of the agency, the Administrator, is a political appointee. Major rulemaking proposed by NHTSA has to be approved by the Office of the Secretary of Transportation (the Secretary is also a political appointee), and also by the Office of Management and Budget, which is part of the Executive Office of the President. So rulemaking on FMVSSs has a political component. FMVSS rulemakings sometimes have taken sharp changes after changes in national administrations, which typically result in changes in NHTSA's politically-appointed leadership. Major controversial decisions on issuing, amending, and/or rescinding FMVSSs, are generally made by political appointees, not by NHTSA's expert career technical staff.[7]*

\* \* \* \* \* \* \* \* \* \*

*The agency has the general authority in the Safety Act to upgrade any or all of the other FMVSS, but, as a practical matter, is limited by resources, not to mention political willpower. The TREAD Act resulted from the extraordinary national publicity and Congressional hearings growing out of the Ford-Firestone controversy in 2000. That intense level of Congressional oversight of NHTSA, and Congressional consensus about the need for legislation directing NHTSA to issue or upgrade certain standards, has not carried over after September 11.[8]*

\* \* \* \* \* \* \* \* \* \*

*In the 1990's it appeared that the agency was moving toward requiring laminated glass or some other advanced glazing for side windows of light vehicles. However, after the change in administrations in 2001 resulting from the 2000 election, the agency changed its approach and acquiesced to the motor vehicle manufacturers' position that the agency should not proceed with the rulemaking on advanced glazing regulatory requirements. The agency's change in approach should be understood in the context of the opposition of the motor vehicle manufacturers. The motor vehicle industry is powerful, and has an enormous influence on NHTSA rulemaking. It is very difficult for NHTSA to issue a standard (or to amend an existing standard*

---

[6] *Id.*

[7] *Id.* at pp. 6-7.

[8] *Id.* at pp. 11-12.

*to adopt a more stringent requirement) to which the industry is adamantly opposed, particularly in a deregulatory environment.*[9]

# VI
## KAM'S PROPOSED TESTIMONY ABOUT
## FEDERAL MOTOR VEHICLE SAFETY STANDARDS

Section V(A), (B), (C) and (F) of Mr. Kam's Expert Report is his personal interpretation of the law.[10] His interpretation of the effect of compliance with Federal Motor Vehicle Safety Standards, and his legal opinion about what those standards do and do not mean,[11] is improper expert testimony. *See Bammerlin v. Navistar International Transportation Corp.*, 30 F.3d 898, 900 (7th Cir. 1994) "The meaning of federal regulations is not a question of fact, to be resolved by the jury after a battle of experts. It is a question of law, to be resolved by the court."); *Contini v. Hyundai Motor Company*, 876 F.Supp. 540 (S.D.N.Y. 1995). Mr. Kam cannot permissibly quote portions of the Safety Act for the jury, and then tell them what, in his opinion, those laws mean.[12] He cannot permissibly give his legal interpretation on the validity of defenses that are raised by manufacturers in some products liability cases.[13] That testimony does not satisfy the requirements of FRE 702.

# VII
## KAM'S PROPOSED TESTIMONY ABOUT
## THE HISTORY OF NHTSA RULEMAKING ON FMVSS 205

Mr. Kam's proposed testimony about FMVSS 205 is not based on his personal knowledge. It is also not testimony based upon sufficient facts or data; is not the product of reliable principles

---

[9]*Id.* at pp. 28-29.

[10]Kam makes it clear that he does not purport to speak for NHTSA. "The opinions and conclusions in this report are mine." Kam Report, *Exhibit "A"* to Document #191 at p. 2.

[11]*Id.* at p. 8.

[12]*Id.* at pp. 9-10.

[13]*Id.* at p. 10.

and methods; and is not an opinion reached after Mr. Kam has applied principles and methods reliably to the facts of this case.

Plaintiffs do not dispute Mr. Kam's lack of personal knowledge concerning FMVSS 205 issues. They offer nothing to contradict GM's showing that:

1.   Mr. Kam's assertion that the automotive industry can exert its influence on existing and potential agency rulemaking is merely "a generic discussion of the rulemaking process" and "not a specific discussion of Standard 205."[14]

2.   Mr. Kam did not personally participate in FMVSS 205 rulemaking proceedings, and did not personally witness any directives given by NHTSA political leadership concerning FMVSS 205.[15]

3.   Mr. Kam has never seen a deliberative process document at NHTSA concerning FMVSS 205.[16]

4.   Mr. Kam was not privy to the recommendations of the career staff at NHTSA concerning FMVSS 205.[17]

5.   Mr. Kam does not know what the technical recommendations of the NHTSA staff were concerning FMVSS 205, and is unaware of any decision by a political appointee on FMVSS 205 that was made notwithstanding contrary recommendations of the NHTSA technical staff.[18]

6.   Mr. Kam does not know what the initial NHTSA technical staff recommendations were concerning the Interim NHTSA Advance Glazing reports were, and whether those were changed in the preparation of the Final Report because of policy guidance that filtered down from the NHTSA leadership.[19]

---

[14] Deposition of Kam in *O'Hara v. GM, Exhibit "B"* to Document #191 at pp. 59-60.

[15] *Id.* at pp. 60-61.

[16] *Id.* at p. 62.

[17] *Id.* at p. 63.

[18] *Id.* at p. 66.

[19] *Id.* at pp. 69-71.

# VIII
## THE DECISIONS INVOLVING MR. KAM CITED BY PLAINTIFFS ADDRESS DIFFERENT ISSUES

A.    No Claim in this Case that Compliance with FMVSS Alone Means No Defect

*Tiller v. Ford Motor Company* does not support plaintiffs' position that Mr. Kam's testimony is admissible in this case.  In *Tiller*, the Court found that Mr. Kam's testimony would be proper rebuttal if the defendant's experts testify that compliance with FMVSS 216 *ipso facto* rendered the roof of the vehicle at issue in that case defect free.[20]  GM's expert will not testify that compliance with FMVSS 205 *ipso facto* renders the driver's window in the subject vehicle defect free.  Further, this Court will instruct the jury that compliance with FMVSS 205 does not *ipso facto* render the driver's window of the subject vehicle defect free.  *See, e.g., Cooper v. General Motors Corp.*, 702 So.2d 428, 435 (Miss. 1997).

B.    No Claim in this Case that GM is not Liable Because there was no Sanction or Recall

*Garcia v. Kelly-Springfield Tire Company* also does not support plaintiffs' position that the opinions that GM objects to are admissible in this case.  In *Garcia*, the plaintiff offered the testimony of Mr. Kam to rebut argument by the defendants that they were not liable for what the plaintiff claimed was a defect because the government never sanctioned them and the government never ordered a recall.[21]  Neither GM's witnesses nor GM's counsel will make such arguments in this case.

Also, *Garcia* found that Mr. Kam's testimony about what NHTSA is, how NHTSA works and the methods NHTSA uses was relevant for the jury to hear so they could understand Mr. Kam's

---

[20]*Order in Tiller v. Ford Motor Company* at p. 20 attached as *Exhibit "F"* to Document #198.

[21]*Order in Garcia v. Kelly-Springfield Tire Company* at p. 2 attached as *Exhibit "G"* to Document #198.

opinion about at what point in time the defendants became aware of certain tire defects.[22]  In this case, Mr. Kam's Expert Report contains no such opinions about at what point in time GM allegedly became aware of glass defects, so that is not an issue in this case.

C.    Mr. Kam Cannot Offer Conclusions of Law

*Evans v. Toyota Motor Corporation* supports GM's position that an expert witness may not offer conclusions of law.[23]  Like *Tiller*, *Evans* involved Mr. Kam's testimony that merely because a vehicle meets the requirements of FMVSS does not necessarily mean that the subject vehicle is without defect.[24]  As explained above, the Court will instruct the jury that, under Mississippi law, the fact that a vehicle meets the requirements of the FMVSS does not necessarily mean that the vehicle is without defect.  Therefore, Mr. Kam's testimony on this issue is not proper expert testimony in Mississippi.

D.    Meaningless Order from *Marroquin*

*Marroquin v. Ford Motor Company* does not support plaintiffs' position that the specific opinions that GM is objecting to from Mr. Kam's Expert Report in this case are admissible.  The *Order* attached by plaintiffs provides no meaningful information about what the issues were in that case, nor does it explain what testimony the plaintiffs intended to offer from Mr. Kam in that case.[25]

---

[22]*Id.* at p. 3.

[23]*Memorandum and Order* in *Evans v. Toyota Motor Corporation* at p. 10, citing *C.P. Interests, Inc. v. California Pools, Inc.*, 238 F.3d 690, 697 (5th Cir. 2001) and *Owen v. Kerr McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) attached as *Exhibit "H"* to Document #198.

[24]*Id.* at p. 11.

[25]*Order* in *Marroquin v. Ford Motor Company* attached as *Exhibit "I"* to Document #198.

E.    Evidence About Punitive Damages is not Proper Rebuttal During the Compensatory
      Damages Phase

*Bahena v. Goodyear Tire and Rubber Company* does not support plaintiffs' position that Mr.

Kam's tendered opinions in this case are admissible.  In *Bahena*, the Court noted that Mr. Kam's

opinions would be relevant on the issue of punitive damages.[26]  In this case, the issue of punitive

damages is not proper rebuttal, and will only be considered by the jury if there is a compensatory

verdict and if the plaintiffs satisfy the requirements of MCA §11-1-65.

The incomplete *Bahena* transcript also indicates that Mr. Kam's testimony was allowed to

rebut the defendant's argument that because a tire was never recalled it was not defective.[27]  For the

same reasons described in the discussion about *Garcia* above, this is not relevant in this case because

GM will not make that argument in this case.

## IX
## CONCLUSION

This Court should limit the testimony of Allan Kam, and exclude those rebuttal opinions

identified in *GM's Daubert Motion to Limit the Testimony of Allan Kam (Plaintiffs' Rebuttal

Witness)* (Document #190) and *GM's Memorandum in Support of Daubert Motion to Limit the

Testimony of Allan Kam (Plaintiffs' Rebuttal Witness)* (Document #191).

Respectfully submitted,

BY:   /s/ Paul V. Cassisa, Jr.
       PAUL V. CASSISA, JR.
       MS Bar No. 5921
       Attorney for Defendant

---

[26] Transcript from *Bahena v. Goodyear Tire and Rubber Company* at p. 37 attached as *Exhibit "J"* to Document #198.

[27] *Id.* at pp. 37-41.

OF COUNSEL:

Paul V. Cassisa, Jr., Esq.
BERNARD, CASSISA, ELLIOTT & DAVIS
P.O. Box 1138
Oxford, MS  38655
(662) 234-7236

Gene D. Berry, Esq.
P.O. Box 1631
Madison, MS 39130
(601) 898-0142

CERTIFICATE OF SERVICE

I certify that on the 20th day of May, 2008 I electronically filed the foregoing with the Clerk

of Court using the ECF system which sent notification of such filing to the following:

Michael B. McHenry, Esq.
Gleason & McHenry
P.O. Box 7316
Tupelo, MS 38802-7316
michael.mchenry@gleason-mchenry.net

Jill M. Madajczyk, Esq.
Patrick M. Ardis, Esq.
Wolff Ardis, P.C.
5810 Shelby Oaks Drive
Memphis, TN 38134-7341
jmadajczyk@wolffardis.com
pardis@wolffardis.com


            _____/s/ Paul V. Cassisa, Jr._____
                  PAUL V. CASSISA, JR.


14